**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **BRANDIE SAVOIE** | * | **CIVIL ACTION NO. 07-0860** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Brandie Savoie, born July 17, 1978, filed applications for a period of disability, disability insurance benefits and supplemental security income on February 18, 2005, alleging disability since October 17, 2003, due to mental problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from University Medical Center Psychiatric Unit dated February 25, 2005 to April, 2005**. On February 25, 2005, claimant was admitted to the Dr. Joseph Henry Tyler Jr. Mental Health Center with suicidal thoughts, not sleeping, racing thoughts, and feeling overwhelmed. (Tr. 141). Paxil was not working. The impression was major depression, recurrent, moderate. (Tr. 138, 143). Her Global Assessment of Functioning ("GAF") score was 10. (Tr. 130).

On discharge, claimant's diagnosis was major depression, recurrent, severe. (Tr. 99). Her GAF score was 58.

**(2) Psychological Evaluation by Sandra Durdin, Ph.D. dated April 20, 2005**. Claimant reported that she had quit working as a CNA because she was too depressed. (Tr. 145). She was not friendly. She was not directly rude or hostile, but conveyed anger.

Claimant reported no abuse during her marriage. She was in the Army for a few months, but was discharged because she was depressed. She had quit working as a welder because "they watched everything you did." She quit another welding job because of the people. (Tr. 146). She had also quit working at a hospital and nursing home because, "They believe the patient is over you, you have no rights." She said that she could not be in crowds or around men. (Tr. 146).

Claimant also reported that she had been abused and raped as a child by a man in her house. She stated that she did not get along with men. She lived with her mother.

In January 2005, claimant had starting going to Tyler Mental Health. She had been prescribed Fluoxetine and Trazodone.

On examination, claimant was alert and oriented in all spheres. Her pace was normal, and her attention and concentration were good. Her speech and language were fully intelligible, and her vocabulary was adequate.

Claimant was mildly depressed. She conveyed an oppositional attitude. Her memory was intact.

Cognitive skills were adequate, and estimated level of intellectual functioning was low average. Thought organization was intact. Claimant had no perceptual distortions and no current suicidal ideations or homicidal ideation.

Dr. Durdin observed that claimant appeared to have chronic problems with authority. She found that claimant manifested features of personality disorder, primary borderline type. She saw no evidence of psychosis or severe depression.

Dr. Durdin further determined that claimant did not present as depressed, but was angry and defensive in terms of personality traits. Her relationships had been

unstable. She noted that claimant should have done better in a trade like welding versus CNA. She stated that "Motivation may be an issue."

Dr. Durdin's diagnoses were depressive disorder, NOS, mild, and borderline personality disorder, primary diagnosis. She found that claimant's ability to understand, remember, and carry out simple and detailed instructions was adequate. Her ability to maintain attention to perform simple repetitive tasks for two-hour blocks of time was adequate. Her ability to sustain effort and persist at a normal pace over the course of a 40-hour workweek was adequate.

Claimant's ability to relate to others, including supervisors and co-workers, was fair to poor, due to her personality disorder and motivation problems. Her ability to tolerate the stress and pressure associated with day-to-day work activity and demands was fair. She was capable of managing her personal financial affairs.

Dr. Durdin saw no severe deficits in attention, concentration, persistence, pace, or memory which would preclude all forms of work. (Tr. 147). However, claimant did have social problems, which she needed to address in therapy.

**(3) Residual Functional Capacity Assessment – Mental dated May 10, 2005**. Joseph Kahler, Ph.D. determined that claimant was moderately limited as to her ability to understand, remember, and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based

4

symptoms and to perform at a consistent pace; to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers. (Tr. 150). She was not significantly limited in any area.

**(4) Psychiatric Review Technique Form dated May 10, 2005**. Dr. Kahler assessed claimant for affective disorders and personality disorders. (Tr. 152). He found that claimant had moderate limitations as to difficulties in maintaining social functioning. (Tr. 162). He determined that she had limitations in the social realm, but retained capacity for simple to moderately complex work with few social demands. (Tr. 164).

**(5) Records from Dr. Joseph Tyler Mental Health Health Center dated February 21, 2005 to May 23, 2006**. On August 25, 2005, claimant's diagnosis was major depressive disorder, recurrent, moderate, without psychosis, and migraine headaches. (Tr. 169, 171). Her GAF score was 35. Her medication was switched from Seroquel, Depakote, and Wellbutrin to Remeron. (Tr. 167).

On November 4, 2005, claimant's diagnosis was major depressive disorder, recurrent, severe, without psychosis, and migraine headaches. (Tr. 166). Her GAF score was 35.

On January 23, 2006, claimant presented for a continuing care evaluation. (Tr. 189). She described a lifelong history of depression, social withdrawal and isolation, poor sleep and appetite, and anhedonia. The assessment was major depressive disorder and post-traumatic stress disorder. (Tr. 194). Her GAF score was 51, and 55 for the previous year. (Tr. 195). She was prescribed Zoloft. (Tr. 181-82, 186).

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on June 21, 2006, claimant was 27 years old. (Tr. 216). She had a high school education. She had been in the military for two months, then quit due to depression.

Claimant attended vo-tech school for welding and nursing assistant. She became certified as nursing assistant. She last worked in December, 2004, as a welder. (Tr. 217).

Prior to welding, claimant had worked as a CNA for about three years. She had also worked as a van driver. She quit working in 2004 due to depression.

Claimant testified that she had been hospitalized in 2005 for five days in a mental institution because she had attempted suicide. (Tr. 217-18). She stated that she was divorced and had two children, ages 11 and 6. (Tr. 218).

As to activities, claimant testified that she bathed and dressed herself; she also drove. She stated that she spent most of her time isolated in the house. (Tr. 223).

Regarding medications, claimant reported that she took Zoloft, Effexor, and Trazodone for sleep. She reported no side effects from the medication. (Tr. 219-20).

As to complaints, claimant testified that her depression made her cry all the time, and she could not sleep. (Tr. 220). She also complained that she talked to herself, and saw people that she did not know. She stated that she would be unable to work because she would forget a lot. She also had problems getting along with people on the job. (Tr. 221).

**(7) The ALJ's Findings**. Claimant argues that: (1) the ALJ's residual functional capacity assessment was erroneous, and (2) the ALJ erred in finding claimant capable of performing her past relevant work as a welder. Because I find that the ALJ erred in assessing claimant's residual functional capacity, I recommend that this matter be **REVERSED** and **REMANDED** for further proceedings.

The ALJ relied on Dr. Durdin's opinion that claimant had mild depression, and that her motivation was questionable. (Tr. 24, 146). However, this evaluation was performed on April 20, 2005 by a non-treating specialist. Subsequent records from claimant's treating physicians at the Tyler Mental Center indicate that claimant had "severe" or "major" depression and a GAF score as low as 35. (Tr. 137-38, 166, 169, 171, 194).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence*." (emphasis added). *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, the ALJ conceded that claimant had depressive disorder, NOS, mild, and a primary diagnosis of borderline personality disorder as found by Dr. Durdin. (Tr. 24). However, he did not cite any *evidence* for discounting the treating physicians' opinions at the mental health center. (emphasis added). The expert opinion of a treating physician as to the existence of a disability is binding on the

8

fact-finder "*unless contradicted by substantial evidence to the contrary*." (emphasis added). *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (*quoting Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)); *see also* 20 C.F.R. § 404.1527(d)(2). Here, the ALJ has cited no substantial evidence to contradict the findings of the physicians at the Tyler mental health center, and a full review of this record by the undersigned fails to disclose any such substantial evidence. This constitutes error.

Additionally, the ALJ failed to perform the proper analysis in rejecting the treating physicians' opinions. The Fifth Circuit has held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." (emphasis in original). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). In *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id*. at 621 (*citing Newton,* 209 F.3d at 456). The ALJ did not consider those factors in this case, which constitutes error.

While the records from the Tyler mental health center indicate that claimant was still experiencing depression and taking medications, they do not indicate the extent to which claimant is able to perform substantial gainful activity. Accordingly, the undersigned recommends that the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to order an updated consultative examination of claimant or an evaluation by claimant's treating physicians, specifically as to her residual functional capacity to perform her past work or any other work.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). *See, Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993)

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after

being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed, September 12, 2008 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE